IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| OXFORD FINANCE LLC,<br>        Plaintiff, | CIVIL ACTION |
| v. | |
| ANDREW MCLELLAN AND A.<br>THOMAS MCLELLAN,<br>        Defendants. | NO.  19-4839 |

### MEMORANDUM OPINION

In 2017, Plaintiff Oxford Finance LLC ("Oxford") financed Fulcrum Equity Partners, LLC's ("Fulcrum") purchase of Liberation Behavioral Health, LLC ("Liberation") – an addiction rehabilitation company which is now in bankruptcy and some of whose employees and affiliates are facing federal and state criminal charges for health and insurance fraud.  Oxford's lawsuit against Liberation investor Andrew McLellan and his father, A. Thomas McLellan – neither of whom have been charged in connection with the alleged fraud – is for unjust enrichment.  Specifically, Oxford's suit is premised on its contention that the McLellans were unjustly enriched when they were paid $4.9 million from the proceeds of the Liberation sale whilst Liberation was engaging in fraudulent and criminal behavior.

I.   **FACTS**[1]

In January 2015, Andrew McLellan ("Andrew") invested $300,000 in Liberation.  The money he invested came from his father, A. Thomas McLellan ("Thomas"), who gave it to him in lieu of his inheritance.  Andrew, along with his father, was one of the first and largest initial investors in Liberation.  Eventually, after a second round of investor funding, Andrew owned

---

[1] These facts are drawn from the Complaint and, for the purposes of the motion to dismiss, will be taken as true.  *See Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993).

approximately 16% equity in Liberation, making him the fourth largest equity owners after the three founding members.  He also served as one Liberation's five board managers from January 2015 until his resignation on December 2, 2017.  As a board member, he received confidential financial data as well as plans to grow Liberation's business.  From as early as May 2016, he used this data to shop around the company focusing solely on obtaining the highest bidder for his equity interest.  He was aided in this effort by his father, a former Deputy Director of the Office of National Drug Control Policy and the founder of a not-for-profit research and development institute, who vouched for Liberation's legitimacy.  Liberation dropped his name in e-mails with a potential partner and he met and communicated with another prospective partner.  He also provided the endorsement of the Coalition of Industry Providers, an organization that attempted to distinguish between "good" industry operators and others.  And, he joined Liberation executives at a meeting – requested by Independence Blue Cross (Liberation's most significant insurer of patients and dollar volume of claims) – to discuss a Blue Cross audit into Liberation's acquisition of certain "relocation" policies.

In December 2016, Liberation received an offer from Fulcrum to purchase the company.  And, on December 11, 2017, the Fulcrum-Liberation deal closed.  The transaction involved a financing arrangement between Oxford and Fulcrum and a purchase agreement between Fulcrum and Liberation.  Oxford, acting as lender and agent for a bank, loaned the vast majority of the purchase funds to Fulcrum disbursing $29.6 million in the deal, and Fulcrum added about $12 million of its own money to purchase 70% of Liberation.  The McLellans received a payout of $4.9 million.

A key provision of the deal was Article II of the United Purchase and Contribution Agreement, which contained representations and warranties from Liberation about the soundness

of its business. Liberation represented that it had all the licenses necessary to carry on its business, that it was and always had been in compliance with all applicable laws, that it had never paid or received any kickbacks, and that all of its claims and billings had always been in compliance not just with the law but also with insurance company guidelines. Oxford funded the deal in reliance on these assurances, Liberation's financial statements that showed the company was profitable, as well as a representation that the Blue Cross audit was a routine effort by the insurer to familiarize itself with a new player in the addiction treatment arena.

The information upon which Oxford relied turned out to be false. Liberation's financial statements included revenue projections based on reimbursements from insurers like Blue Cross, but they were padded by approximately $5 million with accounts receivable income that would never materialize because the company overstated its collection rate. Less than 18 months after the sale Liberation filed for bankruptcy.

Oxford alleges that it was unaware that Liberation and its owners were in the midst of regulatory and criminal investigations and only after the deal closed did it learn that Liberation had performed poorly during virtually all site visits conducted by the Pennsylvania Department of Drug and Alcohol Programs. In March 2019, fifteen months after its purchase by Fulcrum, the Pennsylvania Attorney General and the United States Attorney for the Eastern District of Pennsylvania announced criminal federal criminal charges against Liberation, its owners, and its officers—"the result of an 18-month investigation."[2] The indictments alleged that Liberation

---

[2] Defendants have attached to their motion to dismiss a grand jury presentment, a federal criminal information, and a notice of forfeiture involving Liberation and two of its executives. In deciding a motion to dismiss, a court may consider "the allegations contained in the complaint, exhibits attached to the complaint and matters of public record" and any "undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3rd Cir. 1993). Neither party disputes the authenticity of these documents. Given that Plaintiff's Complaint is based in part on these criminal charges and investigations, the documents may be considered in ruling on Defendants' motion to dismiss.

had been committing healthcare fraud and its executives were using the company as a front for an illegal kickback scheme whereby they received a portion of the proceeds from laboratories to which Liberation patients' blood and urine samples were sent for testing. Liberation fraudulently invented relocations or new residences for patients to avoid insurance companies' coverage restrictions and employed doctors who never saw patients but signed testing and treatment forms so that services could be billed to insurers. Neither of the Defendants here were indicted.

Nevertheless, Oxford alleges that because the McLellans were privy to Liberation's business model and operations, they either knew, should have known, or had a duty to know that Liberation was running an illegal operation and committing insurance and healthcare fraud. Although Oxford makes no specific allegations that the McLellans made misrepresentations to or defrauded Oxford, it does contend that Liberation did – by withholding information and misrepresenting information about, *inter alia*, its finances, the Blue Cross audit, and the criminal investigation – and that, as a result, the McLellans, wrongfully secured or passively received and benefited from $4.9 million of the money Oxford put up for the Liberation sale.

## II. <u>LEGAL STANDARDS</u>

When evaluating a complaint on a motion to dismiss factual allegations are scrutinized under Rules 8(a) and 12(b)(6) to determine if the allegations and inferences proposed from those allegations are plausible. *See Ashcroft v. Iqbal*, 556 U.S. 662, 683 (2009). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *See id.* at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"In light of *Twombly*, 'it is no longer sufficient to allege mere elements of a cause of action; instead a complaint must allege facts suggestive of [the proscribed] conduct.'" *Great W.*

*Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 177 (3d Cir. 2010) (quoting *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)).  "[R]ote recitals of the elements of a cause of action, legal conclusions, and mere conclusory statements" are disregarded. *James v. City of Wilkes-Barre*, 700 F.3d 675, 679 (3d Cir. 2012).  The relevant question is not whether the claimant "will ultimately prevail . . . but whether [the] complaint [is] sufficient to cross the federal court's threshold." *Skinner v. Switzer*, 562 U.S. 521, 531 (2011).

### III.  ANALYSIS

Unjust enrichment is an equitable doctrine in which "the law implies a contract between the parties pursuant to which the plaintiff must be compensated for the benefits unjustly received by the defendant." *Styer v. Hugo*, 619 A.2d 347, 350 (Pa. Super. 1993), *aff'd*, 535 Pa. 610 (1994).  To state a claim for unjust enrichment, a plaintiff must allege: (1) the plaintiff conferred a benefit on the defendant; (2) the defendant appreciated that benefit; and, (3) the defendant accepted the benefit under such circumstances that it would be inequitable or unjust for the defendant to retain the benefit. *Id.*  "Whether the doctrine applies depends on the unique factual circumstances of each case." *Id.*

The McLellans focus only on the first and third elements, arguing that Oxford's Complaint should be dismissed because it does not and cannot allege that Oxford conferred a benefit on them and does not allege that they accepted a benefit under such circumstances that would make it unjust to retain.

### A. Conferral of a Benefit

The "key inquiry in determining whether a Pennsylvania unjust enrichment claim may proceed is whether the defendant received a benefit *unjustly*, and . . . while *direct* conferral of a benefit is not required, the relationship between plaintiff and defendant may not be too remote."

5

*Sheet Metal Workers Local 441 Health & Welfare Plan v. GlaxoSmithKline, PLC*, 737 F. Supp.2d 380, 444 (E.D. Pa. 2010) (emphasis in original). "[P]laintiff need not have directly dealt with each defendant in order to allege a claim of unjust enrichment against them." *Global Ground Support, LLC, v. Glazer Enter., Inc.*, 581 F. Supp.2d 669, 676 (E.D. Pa. 2008) (internal quotations omitted). However, "[i]t is clear . . . that the benefit to the defendant must be more than remote to support an unjust enrichment claim." *Century Indem. Co. v. URS Corp.*, 2009 WL 2446990, at *6 (E.D. Pa. Aug. 7, 2009) (citing *Allegheny Gen. Hosp. v. Philip Morris, Inc.*, 228 F.3d 429, 447 (3d Cir. 2000).

The relationship between the parties here is too remote to sustain a claim of unjust enrichment. Oxford had no direct or indirect relationship with Andrew McLellan. Andrew got his information about how negotiations for the deal were progressing from information supplied to him at board meetings. There are no allegation in the Complaint that he was involved in negotiating the terms of the deal. Neither was he engaged in the closing of the deal – he had resigned from Liberation's board on December 2, 2017, nine days before it was inked. Further, there are no allegations that he made any misrepresentations to Oxford or that he had any communications with it at all.[3]

The transaction took place through a financing arrangement between Oxford and Fulcrum and a purchase agreement between Fulcrum and Liberation. Given this structure, any conferral of a benefit from Oxford to Andrew McLellan was attenuated; indeed, any benefit Andrew received was not from Oxford but from Fulcrum and/or Liberation. *See Sheet Metal*, 737 F. Supp.2d at 444; *see also Century*, 2009 WL 2446990, at *6 (rejecting unjust enrichment claim

---

[3] Oxford makes much of a September 2017 e-mail from Andrew to a Liberation executive in which he stated that he knew "shit [was] going to hit the fan." But, the Complaint does not put this statement in any context – providing no indication of what Andrew was referring to when he wrote it.

where parties' relationship was too remote given complex auditing and reimbursement processes); *Fidelity Nat'l Title Ins. Co. v. Assurance Abstract Corp.*, 2019 WL 1597072, at *3-*4 (E.D. Pa. Apr. 15, 2019) (rejecting unjust enrichment claim where plaintiff could not articulate any benefit it provided to defendants).

Thomas McLellan was even more distanced from the transaction. The only allegations about Thomas are that his background as the Deputy Director of the Office of National Drug Control Policy provided legitimacy to Liberation: he attended several Liberation meetings and recommended Liberation to his contacts. Oxford alleges that at a meeting with a Blue Cross investigator, Thomas heard a Liberation executive acknowledge that some 89 policies should not have been acquired – but there are no facts alleged as to Thomas's knowledge of *why* they should not have been acquired.

Moreover, there are no allegations that Thomas benefitted financially from the sale. Although Oxford alleges that he gave his son the money that Andrew then used to buy Liberation shares, it does not allege that Andrew paid his father anything from the proceeds he got from the sale. Without an alleged benefit, there can be no unjust enrichment claim. *Styer*, 619 A.2d at 350.

### B. Injustice

"[T]he most significant element of the doctrine is whether the enrichment of the defendant is *unjust*. The doctrine does not apply simply because the defendant may have benefited as a result of the actions of the plaintiff." *Styer*, 619 A.2d at 350 (emphasis in original); *see also Torchia ex rel. Torchia v. Torchia*, 499 A.2d 581, 582 (Pa. Super. 1985) ("To sustain a claim of unjust enrichment, a claimant must show that the party against whom recovery is sought either wrongfully secured or passively received a benefit that it would be

unconscionable for her to retain." (internal quotations omitted)).  The intention of the parties is not relevant to determining whether unjust enrichment applies.  *Styer,* 619 A.2d at 350.

Despite its broad name, the doctrine of unjust enrichment "is very far from imposing liability for every instance" of injustice.  *See* Restatement (Third) of Restitution and Unjust Enrichment § 1 cmt. b (Am. Law Inst. 2011).  As the Restatement explains:

> The concern of restitution is not, in fact, with unjust enrichment in any such broad sense, but with a narrower set of circumstances giving rise to what might more appropriately be called *unjustified enrichment*. Unjustified enrichment is enrichment that lacks an adequate legal basis; it results from a transaction that the law treats as ineffective to work a conclusive alteration in ownership rights. Broadly speaking, an ineffective transaction for these purposes is one that is *nonconsensual*.

*Id.* (emphases in original).  Examples of such nonconsensual transactions include when the claimant's consent to the transaction is impaired or when the defendant acquires benefits by wrongful interference with the claimant's rights.  *Id.*

Here, the enrichment was not "unjustified."  *See id.*  Andrew McLellan received $4.9 million for shares he legitimately purchased and then sold to Fulcrum under a valid series of transactions – Fulcrum Equity's purchase agreement with Liberation which was facilitated by Oxford's loan agreement with Fulcrum.  "Courts enforce but do not rewrite agreements into which parties enter."  *Brezan v. Prudential Ins. Co. of America*, 507 F. Supp. 962, 974 (E.D. Pa. 1981) (citing *Johnson v. Fenestra, Inc.*, 305 F.2d 179 (3d Cir. 1962)); *see also Gamesa Energy USA, LLC v. Ten Penn Center Associates, L.P.*, 217 A.3d 1227, 1238 (Pa. 2019).

Oxford argues that while Andrew may not directly have deceived it, even an "innocent" party should not be able to retain benefits that were secured through another's wrongful conduct.  In so arguing, it relies on two cases: *Scott v. Purcell*, 399 A.2d 1088 (Pa. Super. 1980) and *Crossgates Realty, Inc. v. Moore*, 420 A.2d 1125 (Pa. Super. 1980).  But those cases are inapposite, as they involved real estate agents breaching their fiduciary duty to a principal and

benefitting themselves (or their spouse) at the principal's expense. *See Scott*, 399 A.2d at 1091; *Crossgates*, 420 A.2d at 1126. Unlike the principals in *Scott* and *Crossgates* who had every reason to expect that their agents would act in their interest, the McLennans had no involvement in the deal that Oxford, Liberation and Fulcrum negotiated. Simply because the McLennans benefited as a result of Oxford's part in the deal, does not mean they were unjustly enriched at Oxford's expense. *Styer*, 619 A.2d at 350 (unjust enrichment "does not apply simply because the defendant may have benefited as a result of the actions of the plaintiff."

For the foregoing reasons, Plaintiff has failed to state a claim for unjust enrichment. Defendants' motion is granted. An appropriate order follows.

**April 23, 2020**

                **BY THE COURT:**

                **/s/Wendy Beetlestone, J.**

                _____

                **WENDY BEETLESTONE, J.**